The first case is No. 22-1610, Lim v. Radish Media. Thank you, Your Honor. Good morning, Your Honor. Good morning, Your Honors. My name is John Olson, and I represent the plaintiff, Appellant Young-Lim, in this case. The court raised an issue recently about jurisdiction, and I believe that the parties, the submissions from the parties should have resolved that issue, and there is jurisdiction here, so I'm going to proceed directly into the substance of my argument. Everyone that goes to work for a startup, like Mr. Lim did here, wants the same thing. They know going in, they're not going to make the money they would make at an established company. They know there's going to be a lot of chaos, and they know there's going to be long hours and a bunch of different assignments thrown at them. In exchange for all that, they want equity in that company, and they hope that down the road that that equity becomes worth something, and here, this case, Radish Media, the company that Mr. Lim went to work for, that equity did become worth something. The company was sold for $400 million back in 2021. Mr. Lim should be allowed to proceed with this case to collect what he has earned. When the district court threw the case out, it made a mistake. You say that the equity that he has earned accrues a certain percentage in the first year, and then increments thereafter by month. Yes. What's the starting date? The starting date- Because he started working for one company. Then he started working for the other company. Then he became head of product. Which is the starting date? The starting date, it's all the same company. When he goes to work, I don't have the name of the company, but it's the same company, it's the same ownership, it's the same employees. All they did was, as a startup normally will do, during that early period- No, I understand he went to work. Are you saying that's the starting date? Yes, that's the starting date. One year after he started work, his first day, whatever capacity he started in, whatever the name of the entity, one year later he earned 25%, I think. 1.5% was the number, yeah. And there's an email from Mr. Lee, who was the CEO of both companies. And where would I go to find out what the starting- The starting date's actually in the complaint. I don't mean the starting date of the contract, of the accrual, of the stock. When did the- As I said, is it the date that they created this contract for equity? When was that? It's the date that he started working there. That is how the parties recognized it. That's not in the complaint, is it? I think the problem here is that there's really not much information we have about the contract. When, how it was made, what it said. I mean, I think you can see that it is oral, not written. But you still need some details about that. And similarly with the breach, we don't know at what point. I think Judge Jacobs' questions are, when did the alleged breach happen? We don't have dates. We don't have the kind of basic information we need to substantiate the allegation. I believe the complaint was well-planned. Just give us a paragraph then. I mean, direct us if you think the start date is in there. If we're missing it, just tell us which paragraph it is. What I'm looking at, what I think answers the questions from the court right now, is complaint paragraph 17. And in that complaint, that complaint references the email from Mr. Lee, the CEO of the company. And he says, this is how many months you've worked here. This is how many shares that you were allocated. And because you worked 16 months, this is the number of shares that have vested. And that's in paragraph 17 of the complaint. That's post-termination. That's post-termination. Paragraph 16 of the complaint is on the day that, that's the day that, or it's right around the time. It's the day before or day after Mr. Lim resigned from the company. And that's another email from Mr. Lee. And that confirms that while he was working at Radish Media, he earned 536.6 shares. Do you agree with these calculations? Yes. We think there might be an issue with 16 months or 15 months. Do you agree with them? Yes. Yes, we agree. And then as far as the question about the breach. In Plano's mind, the breach occurred when those shares were no longer available for delivery. And that happened when the company was sold to Kakao. So those shares get, Kakao buys the company. And those shares can no longer be delivered to Mr. Lim. Now, I don't- Sorry, can you point us to paragraph in the complaint where you discuss the breach? Because there's, I mean, I understand that there was acquisition. Yes. But wouldn't there have to be then a demand by your client for the equity, for his claimed equity stake? There were, no. Actually, no, Judge. And the reason I say no is because normally, like, say you bought, you held stock. You bought stock, you invested 10 years ago. And you wanted to sell that stock. You call up your broker, and you say sell the stock. You don't have to possess that stock. There's no, so this is a term that the court, the district court implied into the contract. That there was some requirement that Mr. Lim actually possess the shares of the stock. That's not how the contract worked. And that's not how the industry works. No, I think I'm giving you the benefit of the doubt here. That the breach of contract would be when he claimed, when he asked for what he claimed to be entitled to. And was refused that. And my question is when that happened. And I didn't see that the acquisition by Kaka was the day when your client made that demand. No, he didn't make, he made the demand leading up to filing the complaint. I believe that there's a reference in the complaint to making several demands for the, or several requests for the stock. That's paragraph 20, where he just says on several occasions without giving us any dates, right? Yes, that would be it. So what are the dates? I certainly can put those dates, there are emails and there are. What's your position as to what the breach is? The first date in which he asked for the stock, the first date he was denied, the first day he asked for the money, the proceeds, it was denied. Or the day that all of the stock was sold to Kakao and he didn't get the proceeds. The last, your honor, when the stock was sold. There's no reason for him to make a demand before then. And normally a shareholder wouldn't do that. So if that was five years later, then how do you get around the statute of frauds issue? The statute of frauds issue, this is an employment at will contract. So you have that where California law and New York law are consistent that an employment contract at will, that can be terminated within one year, does not fall within the statute of frauds. And we also have the emails from the company. I'm not sure what that has to do with. I thought your claim is that he had an equity stake. And that was receivable when he made a claim for it. And I don't see what that has to do with the terms of his at will employment. That was part of the at will employment. He earned a salary and he earned the equity stake. That was all, it's the cases that we've cited in the brief discuss a bonus that can't be decided until after the year is completed to find out the profits. There's another case in New York that talks about- Okay. Well, but employment still ended four years before the acquisition, right? Yes. And does there not need to be some kind of memorialization of the contract that may not be fulfilled in a year? Well, there is a memorialization. We know that the company has a record of Mr. Lim owning the stock. And that's confirmed by an email from the CEO. And my time is up. Can you just tell me what is the date of the acquisition of the stock by Kakao? I believe it was June 2021. 2020? Yeah, 21. And this is going to the complaint. The complaint was filed before the acquisition occurred, right? It was paragraph 25. The transition is expected to close in June 2021? Yes. It was announced. There were press announcements of the acquisition. The purposes of the complaint, at least as measured by that, the date of the filing, that acquisition had not yet been consummated. Right. It was shortly-we filed the complaint shortly before the acquisition. Okay. Thank you, Counselor. You're reserved a couple minutes for a question. Yes. Thank you. Mr. Nelson. Thank you, Your Honors, and may it please the court. My name is James Nelson. I represent Radish Media and Mr. Lee, the defendant's appellees in this matter. The district court was right to dismiss the complaint below for several independent reasons, and this court should affirm. First, because the complaint was filed too late, it is barred by the statute of limitations, and that defeats all of Mr. Lim's claims. Second, the statute of frauds issue also resolves both the contract claim and the unjust enrichment claim under governing New York law. The contract also was not properly pled as far as the material terms of the contract with specificity, and under New York and California law, it should be dismissed for that reason as well. Starting with the statute of limitations. As to the last one, wouldn't the plaintiff have an opportunity to replead? It would depend on the reasoning for the dismissal, Your Honor. In this case, we don't believe so, that he should have an opportunity to replead because he hasn't actually said what he would change about the contract that would solve the problems that were identified by the district court. And at some point, he's now filed three briefs in this case, and he's never identified the new facts that he would put into the complaint that would make amendment not futile. And so the district court was right to hold that any amendment would be futile, and that's a ground not suitable. Wasn't that more about the statute of limitations? Let's say, hypothetically, we disagreed with you and thought that the dates for when all of this is happening are simply too fuzzy right now. At least they can't be judged on the face of what we have before us. If it gets to the contract claims, to the meat and potatoes of the contract claims, isn't that? You can imagine any number of allegations one might add to a complaint to get around some of these arguments. Or do you disagree with that? I agree that the district court pointed only to the statute of limitations for its futility finding, Your Honor. But I think that because plaintiff hasn't actually said what facts that he would allege at any point that would solve any of the other problems, that futility finding can be affirmed for any other reason. I think the statute of frauds would be the easiest, because he's conceded this is an oral agreement. And so there's nothing that he could allege on remand that would solve the statute of frauds issue. So that would also be futile. Does the statute of frauds impair an actual employment? So, Your Honor, it does in some cases. So the plaintiff has cited several cases that say generally, typically, at-will employment contracts are not subject to the statute of frauds. But if a contract does have a term that cannot be completed within a year, as he concedes this equity term would not be owed and could not be completed until after one year's time, that promise at the very least is subject to the statute of frauds. The general rule is that if there's any promise in a contract that can't be completed until after a year of the whole. Can the statute of frauds be waived by an admission that the compensation is owed? Because your client seems to have done that. So, Your Honor, we would disagree with that. So on reply for the very first time, plaintiff cited two cases about admission to the existence of a contract. The first case, American Talent, actually held that emails referencing a contract do not suffice for an admission. Instead. How about an email saying, I owe this to you as a result of that contract that might otherwise be barred by the statute of frauds? So, Your Honor, I think we might quibble with the interpretation of the email. But even if that's what the email said, that's not enough. Under the DZEC case that plaintiff cited on reply, it says that every material term of the contract has to be in the supposed admission. And it's undisputed here that every material term of the contract is not in this supposed written admission. And so that does not suffice. Plaintiff also cited the general obligations law, 5-701. He said his quote was from section A. It's actually from section B. And it said you don't need all of the terms in an admission if it is a qualified financial contract between two companies. That's all that section B covers. That's the quote that he included there. Besides the case I just described and that quote, he has no authority whatsoever that a post-termination email that does not include all of the material terms of the contract suffices for the statute of frauds. On the statute of limitations, Your Honors, I just want to point out that while the complaint is very fuzzy, and paragraph 20 says that he demanded his equity stake on many occasions, the very next paragraph, 21, says that at the end of 2017, everybody else at the company received what he was demanding. So we think a plain reading of the contract is that he demanded before that. He says he demanded on several occasions since leaving Radish Media, not since he heard about the acquisition. But then it sounds like you would agree that the start of the statute of limitations would be the time when demand was not fulfilled and not the point. So I think that is the very latest when his claim would have accrued. I think we agree with the district court that it's when he could demand his payment. But at the very least, in this complaint- Why would it be when he could? I didn't understand that reasoning. Why would it be when he could have demanded? So the New York case law that the district court cited, that it's when he had the legal right to demand payment. And in this case, he argued, or he alleged, that he was entitled to and he owned the stock when he left the company. And that he did demand that stock. And so the face of the complaint says that he owned it and could demand it at any time. And under New York cases, that's sufficient for his claim to accrue. But I want to point out- I don't understand how that could be. There's no breach. That doesn't sound right to me. So when I have the legal right to make a claim, even though I haven't made it, how do I know that there's going to be a breach? Well, you don't, Your Honor. But the statute of limitations is generous. So if I owe you money and you just never ask for it, the statute of limitations starts to run. And it's two years, three years. And you have that amount of time to ask for it. And then at that point, you can bring your lawsuit. But, Your Honor, I don't think the court needs to get into this issue at all. Because the statute of limitations for oral contracts is two years. And he says that he demanded on several occasions and was refused. And actually, counsel just argued that the breach here was the sale to Cacao. At page 17 of his brief and page 7 of his reply brief, he said the breach of contract was Radish's refusal to transfer the shares to him when he asked for them. Did Radish state why he was not going to transfer the shares? That is not alleged in the complaint. And I don't know the answer to that, Your Honor. But I will also say that on page 1 of the reply brief, he says he requested it on several occasions. And the 2016 and 2018 emails were, quote, in response to his requests. That is a blanket, fair, plain, you know, unambiguous admission. Generally speaking, it seems odd that a statute of limitations should run while somebody has an accrued right to stock just because they don't want to cash it in. I mean, you can, with almost any kind of stock, you can wait until you think it's profitable. And why isn't that what happened here? Well, Your Honor, I think that would be a really difficult case. But that isn't what happened here because of the allegations in the complaint and in his briefs, that he requested and demanded his stock, that Radish on several occasions refused to give him his stock, and it gave the stock to every other initial employee besides him in 2017. His oral contract claim at least began to run by the end of 2017, according to those allegations. So can I just ask you, I'm trying to figure out the implications. If you had, say, this sort of contract here, but instead of it accruing sort of a chunk and then accruing over what is 48 months, let's say it was going to accrue over 10 years, and the person quits in year nine, and he's been happily at the company. He thinks it's all vesting, a month at a time, and you have, let's say it's an oral contract, and you say you've only got a two-year statute of limitations. The person then quits in year nine. Are you saying that he could only bring a claim of breach of contract for the last two years, that all those previous seven years because he never asked for them a month at a time, a month at a time they kept slipping away behind the statute of limitations? I think that's the implication of your argument, is that if you don't, within two years, sue for something that you think everything is fine, you're never going to have the right to get it again, assuming all other things being equal, oral contract, two-year statute of limitations. That seems odd. Well, Your Honor, I agree that that's a really difficult question. I mean, I think there would be a statute of frauds problem with that as well. I mean, the reason for these doctrines is so that parties put things in writing, so that they make the terms clear. The statute of frauds, the policy behind it is because we want written contracts for contracts like that. But doesn't it suggest these difficulties that that's also why we require all the elements of the claim to accrue before the statute of limitations starts running, which would include a breach? Yes, Your Honor, and I think we would agree with that, and I think the breach clearly happened by the end of 2017 in this case. I guess I'm not sure I see that. And again, here, for the complaint, we're required to draw every reasonable inference in favor of the complainant here. You're asking us to infer that on several occasions means in a certain date range, right before 2017. Well, we're not asking you to do that, Your Honor. No, you're not. In the reply brief, page one, he admits it. He says he requested his equity several times and that the 2016 and 2018 emails were in response to those requests. I see. I see my time is up. I'm happy to answer. So that's 16 and 17 paragraphs. That's what you're saying. That's where that inference on your part comes from. It's sort of cabined by those dates. And page one of his reply brief, Your Honor. Thank you, counsel. Mr. Olsen, you've reserved two minutes for rebuttal. Yes, I'll be brief, Your Honors. I don't want to derail your argument, but you want an opportunity to amend your complaint. Yes. And yet, in your presentation, you said you were happy with it. So if you had the opportunity to re-plead, what would you fix? I would fix all of the concerns that the court has raised today and the district court has raised as well. There was some discussion a few minutes ago about what- I mean, some of the things you can't fix, it seems like. If it's an oral contract and you've got a statute of frauds problem because it's over a year, things like that. So what specifically would you fix? The statute of frauds, again, we do have the general obligations law. We do have those cases that say that the statute of frauds does not apply. Well, those are legal arguments about why, as currently it stands, you think you win. Yes. Assume you lose. Okay. And assume, though, that you ask for an opportunity to change your complaint to get around the problem, the legal problem, say, as the district court has now identified. Yes. What would you add to your complaint to get around these legal rules as currently stated, assuming we were to agree with the district court? I think that's where we're going with this. Yes. We'd certainly flesh out more of the detail of the employment relationship and the agreements. In what way? I mean, what allegations would you add that would be different factually? Really, I just think we would strengthen what we have by adding more details to the- But we're asking for which details. So we want to judge for ourselves. If you said add more detail, we want to know whether these are materially different details. We're asking for specifics. I would add details about the chaos surrounding the company in those first few years. The court asked some questions about what was the response to Mr. Lim's request for the stock. The response was, we can't do it yet. We don't have the mechanisms in place. And that held up the process. It also satisfied Mr. Lim. What was the mechanism by which the stock was granted to others? They eventually set up an employee stock plan. When was that? That was done, I think, in 2017, I think. I think that's what the complaint alleges. But we don't know for sure because he's not an employee. So we would add allegations about the chaos surrounding the ability of the company to actually- This is not very useful in pleading in a complaint. But it can explain why there was a delay. It would also make it clear that the stock is Mr. Lim's. He was granted that stock. Now, this is just a matter of getting that stock transferred. And, again, we know he has it. There was no reason for him to demand this sooner. And once it became apparent to him that that stock was never going to get delivered when Kakao purchased, he had to take legal action. Your friend said that putting together allegations in the reply, I guess your reply, and then the paragraph, I can't remember if it was 21, or with the demands from all the other employees in 2017, I think it was, or 16, that suggests that the emails that you point to were in response to a demand that had already been made, which seems to suggest that you would still run into a statute of limitations. I think that's the way that the defendant would characterize those. We would clear that up in an amended complaint. And how would you clear that up? They were friends. So it was either an email or they used, I think, chat app on the phone. Say, hey, tell me about my stock. Where is it? What's going on? And he was assured over and over again, we're working on it. You'll have that stock. I think at one point you suggest that if you had a chance to amend a complaint, you would add an allegation that the employment contract was at will. I'm not sure adding the words at will alone really do much. It sounds conclusory. Do you have any specific factual allegations that you propose to add that would demonstrate that it was an at will contract? Yes. What would they be? Mr. Lynn was able to resign his position, and neither side was obligated any further. That's what the cases all look for in the statute of frauds, whether the employment relationship could end, and neither side would be obligated any further. Now, the issue that we have here was that it took one year to earn, to vest the shares that he has. But that's no different than taking the bonus. The two cases are Gilbert and Crone, and they look at bonuses and pension contribution. In both instances, you can't determine what the amount of that bonus is going to be until the year is over. And the court's very clear, the New York Court of Appeals, it doesn't matter that you can't calculate what was owed during that year until after the year is complete. It's still an at will employment arrangement, and the statute of frauds does not apply. When did the 1.2% become 1.5%? During the course of his employment, during those 16 months. I know, but I mean that's not entirely helpful. We would amend the complaint and add an allegation as to exactly when that happened. Again, they communicated a lot by snap, by chat, chat app, and by email. Okay. Thank you, counsel. Thank you both. Take the case on your last night.